HELEN LAMMES, as Administratrix, etc., of REINDERT LAMMES, Deceased, Plaintiff, *v.* WARD BROTHERS Co., INC., Defendant.

Supreme Court, Monroe County, May 17, 1929.

*Samuel Levy,* for the plaintiff.

*Chamberlain, Page & Chamberlain* [*Harold E. Stonebraker, Francis J. D'Amanda* and *J. Stuart Page* of counsel], for the defendant.

RODENBECK, J. The plaintiff's intestate was conducting the business of a baker at Ontario, N. Y., and, some question having been raised about the use of substitutes by him in making bread, during the war period, he sent a loaf of bread to the Food Administrator and received back a certificate that his bread complied with the requirements as to ingredients. This certificate was advertised by him, and suggested to him the name " Certified " as a name for his make of bread. He continued to use this name and did business in a number of surrounding towns, when in June, 1921, the defendant Ward Brothers Co., Inc., having previously been selling bread in this territory, introduced a bread inclosed in a wrapper similar to that used by the plaintiff, although not identical with it in color, with the word " Certified " stamped conspicuously upon it, and a seal almost identical with that upon the wrapper of the plaintiff's intestate. The two wrappers were so much alike that a purchaser was liable to be deceived, and persons were misled in seeking to purchase the plaintiff's bread, and by the use of " Certified " by the defendant. There is no question but that the two wrappers were so nearly alike that an ordinary person might be deceived in the make of the bread received by him in asking for certified bread. There is no evidence to justify a finding that the word " Certified," as applied to bread, was used by the defendant or any one else prior to its use by the plaintiff. It is a non-descriptive term, distinguishing the plaintiff's bread from any other make, and, as such, its use by another maker of bread in the territory served by the plaintiff's intestate and by plaintiff and appropriate for the extension of the business, may be enjoined.

The defense chiefly relied upon by the defendant is the delay of the plaintiff's intestate in instituting this suit. A large campaign of advertising was adopted by the defendant after June, 1921, and large outlays were made by it. But the defendant received a letter from the attorneys for the plaintiff's intestate in 1923, notifying it that the exclusive use of " Certified " was claimed by the plaintiff. A reply thereto was sent by defendant's attorney, disavowing the right of the plaintiff to the exclusive use of the word " Certified," and the campaign of advertising, not only in and about Rochester, but in the surrounding towns and other States, was continued, and, now, the defendant claims that this position of the defendant, and its expenditures, operates to bar the plaintiff from any recovery on the ground of laches. This defense should not prevail. The defendant knew, shortly after it started to use the word " Certified," that its right to do so was questioned, and it is hardly in a position to appeal to any equitable considerations to bar the plaintiff on account of the outlays made

by it in advertising incurred in popularizing the use of the word " Certified," after such notice.

The facts are that the term " Certified " as applied to bread was first employed by plaintiff's intestate; that defendant was notified of his claim to the exclusive use of the term in 1923, and knew of its use before that time, and that, in disregard of the claim of the plaintiff and her intestate, it has continued to use the term. It took the chance of its continued use, and, under these circumstances, the legal rights of the parties should be determined without regard to what the defendant did in the way of expenditures after it knew of the claim of the plaintiff's intestate. It was not unreasonable for the plaintiff's intestate to delay suit until after he had determined whether or not the use of the term by defendant would affect his business. The evidence shows that his sales diminished from the time that the term was employed by the defendant, until plaintiff's intestate was obliged to discontinue the sale of bread at wholesale to dealers, and to confine the sale of it to the retail trade. This did not occur until 1926, and suit was brought the same year, so that there was no laches.

There is evidence from which it may be inferred, fairly, that the defendant, knowing of the use of the wrapper, trade-mark " Certified," and seal, employed by plaintiff's intestate, deliberately and intentionally set about to simulate them, and thereby secure the trade of plaintiff's intestate and force him out of business with reference to the sale of " Certified " bread. This act of the defendant distinguishes this case from those cases where the use of a trade-mark similar to one employed by another was made in good faith. Where the simulation of a trade-mark is accomplished in bad faith, the originator of the trade-mark is entitled to an injunction covering adjacent territory into which the sale of his products, under the trade-mark, may very reasonably be extended. The use of the trade-mark " Certified " by the defendant in the various towns of the counties of Wayne and Monroe was made with the design of appropriating such territory, including the counties of Wayne and Monroe, available for the extension of the business of the plaintiff's intestate and that of the plaintiff, and with the design of forestalling the extension of such trade to such territory. A trade-mark that is good in one part of a town and county is good in the entire town and county. In *Hanover Milling Co.* v. *Metcalf* (240 U. S. 403) Mr. Justice HOLMES said: " I do not believe that a trade-mark established in Chicago could be used by a competitor in some other part of Illinois, on the ground that it was not known there. I think that if it was good in one part of the State it was good in all " (p. 426). The scope of the injunction, therefore, should apply

not only to the portions of the towns of Wayne and Monroe counties, where the plaintiff's intestate had sold " Certified " bread, but to the entire counties of Wayne and Monroe in parts of which the sale of such bread had been made.

The plaintiff is entitled to an injunction restraining the defendant from simulating the plaintiff's wrapper, and seal, and using the term " Certified " in connection with its products, in the counties of Wayne and Monroe, and to the damages resulting from the acts of the defendant, and to the profits realized by the defendant from the unlawful use of such trade-mark. (*Cutter* v. *Gudebrod Bros. Co.*, 190 N. Y. 252.) " In this country both the damages suffered by plaintiff and the profits realized by defendant may be recovered." (38 Cyc. 913.) Costs are awarded the plaintiff.

So ordered.